IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THOMAS WALLACE, # 268813 | * | |
|     Plaintiff, | | |
|     v. | * | CIVIL ACTION NO. RDB-12-3717 |
| CORIZON MEDICAL SERVICES | * | |
| DEREJE TESFAYE | | |
| CHRISTY SOMNER | * | |
| SHARON L. BAUCOM | | |
| GREG FLURY | * | |
| CARLA BROWN | | |
|     Defendants. | * | |

*****

## MEMORANDUM OPINION

Pending is self-represented Thomas Wallace's ("Wallace") Complaint filed pursuant to 42 U.S.C. § 1983 (ECF No. 1). Defendants, Corizon Medical Services ("Corizon"), Medical Director Dereje Tesfaye, Christy Somner, Director of Clinical Services Sharon L. Baucom, and Greg Flury,[1] by their counsel, have filed Motions to Dismiss or, in the Alternative, Motions for Summary Judgment with affidavits and verified exhibits. ECF Nos. 31, 33. Wallace has filed Opposition responses. (ECF Nos. 41, 42, & 45). Oral hearing is not needed to resolve the issues. *See* Local Rule 106.5 (D. Md. 2011). For the reasons that follow, the claim against Defendant Brown IS DISMISSED and the remaining Defendants' Motions for Summary Judgment ARE GRANTED. Judgment will be entered in their favor.

## BACKGROUND

In his Complaint, Wallace, an inmate at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, claimed that in August of 2011, his medical diet was "suspended." Rather than afford him a substitute food regimen, however, he asserted that

---

[1] Defendant Carla Brown, an unidentified member of the prison medical department, was not served. It is apparent that Wallace's claim against her is unavailing for the reasons discussed herein. The claim against Brown will simply be dismissed.

medical personnel told him to "stay away from the foods I'm allergic to, placing the burden on me to provide my own calorie needs even though this is the institutions job." (ECF No. 1 at p. 4). Wallace further complained that the Division of Correction has a duty to provide adequate meals and calories and to ensure that an inmate's medical diet needs are met. He accused Defendants of negligence and deliberate indifference and he seeks compensatory and punitive damages and the restoration of his medical diet.

**I. Plaintiff's Allegations**

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris,* 550 U.S. 372, 378 (2007); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That review liberally construes Plaintiff's pleadings in light of the fact that he is self-represented. *See Gordon v. Leek*, 574 F.2d 1147, 1151 (4th Cir. 1978).

**Medical Diet**

Wallace alleges that his diet was "suspended" and despite his grievances he was not provided the diet but was, in effect, told to self-control his food intake to avoid any foods to which he had an allergic reaction.

Director of Clinical Services Defendant Sharon Baucom responds that she does not prescribe medical diets to the inmate population, nor does she have supervisory authority over private medical contractors. (ECF No. 31, Ex. 2). Baucom affirms that in August of 2011 she did write a memorandum to Defendants Tesfaye and Somner to indefinitely hold the implementation of the section of the Diet Manual addressing food allergy challenge testing because it was outdated. She further advised that the allergy kit test had not been cleared or approved by the Food and Drug Administration ("FDA") and should not be used for diagnosis

without confirmation by other medically established means. (ECF No. 31, Ex. 2). Baucom maintains that inmates claiming to have allergies to "tomatoes, beef, celery, fish, etc.," without a description of a life-threatening event or symptoms, should be instructed to simply avoid those foods. Further, Baucom asserts that receipt of requests for diets that fall outside of the eggs, peanut allergy, and articulate corn peas, vegetables, beef, all pork products, etc. should be facsimiled to the regional medical director with a copy to Corizon's statewide medical director for disposition, education and counseling. She denies that she has advanced the policy of putting the burden on the inmate to self-monitor and validate food allergy and therapeutic diets as Wallace alleges. (*Id*.).

## Administrative Remedy Procedure

It is clear from the record that Wallace is no stranger to the Administrative Remedy Procedure ("ARP") grievance process. He filed a total of 17 ARPs between March 20, 2009, and March 1, 2013. (ECF No. 31, Ex. 3). The record shows that Wallace filed ARP-NBCI-3285-11 regarding the suspension of his medical diet. After investigation, corrections officials dismissed the grievance as without merit. (*Id.*, Ex. 3). An appeal was filed to the Inmate Grievance Office ("IGO") and was administratively closed, when Wallace failed to respond to an IGO request to provide additional documentation (*Id*., Ex. 4). No appeal was filed to the Circuit Court for Allegany County.

Medical Defendants (Corizon, Tesfaye, Flury and Somner) argue that they cannot be found liable under a respondeat superior theory under § 1983. (ECF No. 33). They further argue that Wallace's needs were addressed and rely on his medical record to support their position. They maintain that Wallace had blood testing performed on August 5, 2011, which indicated a

potential allergic reaction to peanuts and soybeans. (ECF No. 33, Ex. 1 at pgs. 7-8 & 11). The test was, however, performed using a kit not approved by the FDA and was not to be used for diagnosis without confirmation by other medically established means. (ECF No. 33, Ex. 1 at pgs. 7-8, 11, 14 & 16).

Physician's Assistant ("PA") Greg Flury reviewed the results and noted a reaction to peanuts and soybeans. In response to these test results, on August 17, 2011, Flury modified Wallace's diet plan to exclude peanuts and soybeans for one year. (*Id*., Ex. 1 at pgs. 12-13 & 18). On August 31, 2013, the Baucom memorandum was sent to Corizon's medical administrators advising them that the aforementioned food allergy testing performed by BioReference Laboratories had not been approved by the FDA and recommending that when there is no description of a life-threatening event or symptom(s), the inmate should be advised to simply avoid the noted food. (*Id*., Ex. 2).

Medical Defendants further assert that Wallace addressed his food allergy on October 26, 2011, when he asked to be re-tested for his food allergy because the previous test was not FDA approved. He was seen by medical staff three days later and advised a nurse that soy causes him to have frequent bowel movements. Per the Baucom memorandum, he was informed as to what foods were soy-free, and was encouraged to avoid soy-containing foods. (*Id.,* Ex. 1 at pgs. 57-59). In an earlier sick-call request, filed on October 24, 2011, Wallace complained that since being taken off the "no soy" diet, he had suffered from an itchy throat, severe diarrhea, and stomach pains. (*Id*., Ex. 1 at p. 62.) On November 14, 2011, Wallace was seen by PA Flury, who educated Wallace as to the current prison policy pertaining to soy-free diets when non-life threatening allergy is suspected. (*Id*., Ex. 1 at p. 65).

4

On January 1, 2012, Wallace filed a sick-call slip stating that he was suffering from rapid weight loss. (ECF No. 33, Ex. 1 at p. 90). He was seen by a prison nurse on January 3, 2012, and discussed his food allergy to soy and peanuts and the fact that he could not supplement his diet with food from the commissary because he was housed on segregation. Wallace was evaluated and found to have lost a total of 5 pounds between July of 2011, and January 4, 2012. One week later, however, it was found that his weight (174 pounds) had been consistent over the preceding two-year period and he had gained weight since his January 4, 2012 examination. (*Id.*, Ex. 1 at pgs. 92 & 98).

## STANDARD OF REVIEW

### I. Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir.2006). (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). This Court, however, "need not accept the legal conclusions drawn from the facts, and [the Court] need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v.*

*Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009) (internal quotation marks and citation omitted).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's decision in *Twombly* articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. Id. (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim). Second, a complaint must be dismissed if it does not allege a "plausible" claim for relief. *Id*. at 678–79 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### 2. Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (emphasis added). Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere

allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.' " *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir.2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *Scott* 550 U.S. at 378 (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore,* 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted). At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson* 551 U.S. at 94; *Cruz v. Beto*, 405 U.S. 319 (1972). The requirement of liberal construction does not mean the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services,* 901 F.2d 387, 391 (4th Cir. 1990). The Court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

## ANALYSIS

The Complaint is filed pursuant to 42 U.S.C. § 1983, which "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). A suit under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege that: (1) a right

secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Defendants assert that Wallace's claim filed against them is dismissible under Rule 12(b)(6) on grounds of respondeat superior and non-exhaustion and under Rule 56 for the failure to demonstrate a violation of the Eighth Amendment and on the ground of qualified immunity.

## I. Respondeat Superior

Wallace's claim with regard to Defendant Baucom is based on her supervisory position as Director of Clinical Services for the Maryland Department of Public Safety & Correctional Services, as she does not appear to have been personally involved in the matters at issue. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978); *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.' *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). Supervisory liability under 42 U.S.C. § 1983 must be supported with evidence: 1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; 2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged

offensive practices; and 3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The Complaint fails to forth such allegations, and there is no evidence to suggest Baucom had actual or constructive knowledge of the matter at issue here.

Further, to the extent the Complaint names Corizon in the alleged denial of medical care solely upon vicarious liability, the law in this circuit is clear: principles of municipal liability under § 1983 apply equally to a private corporation. Therefore, a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of *respondeat superior*. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982). A § 1983 claim may not be framed against Corizon.

**II. Failure to Exhaust**

Defendant Baucom argues that Wallace's claim is barred due to his failure to exhaust administrative remedies. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Proper exhaustion of administrative remedies demands compliance with an agency's deadlines and other critical procedural rules because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S.

9

81, 90-91 (2006). Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendant(s). *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

Wallace's claim against Baucom falls under the exhaustion prerequisites of § 1997e(a),[2] and must be dismissed unless he can show that he has satisfied the administrative exhaustion requirement or that Baucom has forfeited her right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003). In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ("ARP") process provided by the Division of Correction. If this request is denied, the prisoner has thirty calendar days to file an appeal with the Commissioner of Correction. If an appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office. *See* Md. Code Ann. Corr. Serv. §§ 10–206, 10–210; Md. Regs. Code Title 12 § 07.01.03.

---

[2] In *Adamson v. Correctional Medical Services, Inc.*, 359 Md. 238 (Md. 2000) the Court of Appeals of Maryland examined the legislative history of the Maryland Administrative Remedy Procedure ("ARP") grievance process and observed that it permitted a prisoner to submit a complaint for grievances against officials or employees of the Maryland DOC and Patuxent Institution through to the IGO. The state appellate court further noted that the IGO declines to hear prisoner grievances against private health care contractors. *Adamson*, 359 Md. 266-271. The Court of Appeals concluded that the Maryland prisoner administrative remedy process does not encompass complaints against private medical providers under contract with the state. This Court has adopted the *Adamson* analysis and found that administrative exhaustion may not be raised as an affirmative defense by private healthcare providers at DPSCS facilities. *See Shipe v. Mumby and Simmons,* 2012 WL 5417332 (D. Md.)*; Chisum v. Maryland,* 2010 WL 481350 (D. Md.) *Calhoun v. Horning, et al.,* 2009 WL 2913418 (D. Md. 2009). Therefore, in this case, the exhaustion defense may only be raised by Defendant Baucom.

Wallace's failure to exhaust administrative remedies is undisputed. The record shows that he had access to the ARP grievance process, but did not fully grieve claims regarding his medical diet. This failure also provides a basis for his claim against Baucom to be dismissed.

**III. Medical Care**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to an inmate's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious.[3] *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with

---

[3] A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241, citing to *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999).

unqualified access to health care).  Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition.  *Farmer*, 511 U.S. at 839-40.  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).  "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844.  If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.  Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time.  *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2001); *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Inmates do not have a constitutional right to the treatment of their choice, *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986), and disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury. *See Estelle*, 429 U.S. at 105-06;  *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Fleming v. LeFevere*, 423 F.Supp.2d 1064, 1070-71 (C.D. Cal. 2006).

The exhibits show that Wallace has a history of hypertension and Hepatitis C.  ECF No. 33, Ex. 2.  In August of 2011, lab results revealed that he tested hypersensitive to peanuts and

soybeans. (*Id*.). Because the test taken had not been approved by the FDA, however, medical staff followed the recommendations of Sharon Baucom. As Wallace had not experienced life-threatening symptoms, he was advised to refrain from eating foods with peanut and soybean content. He has not shown an objective injury from the policy. No Eighth Amendment violation has been demonstrated.[4]

## CONCLUSION

Even when the evidence is viewed in the light most favorable to him and all justifiable inferences are drawn in his favor, Wallace's claims are factually unsupported and no genuine issue of material fact is presented. Accordingly, Defendants' Motions for Summary Judgment will be GRANTED. Judgment will be entered in favor of Defendants Baucom, Corizon Medical Services, Flury, Somner, and Tesfaye. The claim against Defendant Brown is dismissed.


Date: December 18, 2013.                              /s/
                                            RICHARD D. BENNETT
                                          UNITED STATES DISTRICT JUDGE

---

[4] As no constitutional violation has been demonstrated, the Court need not address the State Defendant's qualified immunity argument.